[No. B083200. Second Dist., Div. Four. Nov. 28, 1995.]

RODNEY A. BRIGGS et al., Plaintiffs and Appellants, v.
CITY OF ROLLING HILLS ESTATES, Defendant and Respondent.

**COUNSEL**

James S. Link for Plaintiffs and Appellants.

Adams, Duque & Hazeltine, Le Boeuf, Lamb, Greene & MacRae and Richard R. Terzian for Defendant and Respondent.

## OPINION

### VOGEL (C. S.), J.—

#### INTRODUCTION

Plaintiffs and appellants Rodney A. and Nancy Briggs own a home in the city of defendant and respondent City of Rolling Hills Estates. As a condition of permitting a substantial addition to plaintiffs' house, the city required that an unapproved patio/deck which intruded on a neighbor's privacy be removed. Plaintiffs did not seek judicial review of this condition by administrative mandamus (Code Civ. Proc., § 1094.5) but instead brought this action for injunctive relief and damages under the federal Civil Rights Act (42 U.S.C. § 1983), alleging that the city's neighborhood compatibility ordinance is void for vagueness and that the city wrongfully deprived plaintiffs of their constitutional right to use their property. The trial court granted summary judgment in favor of the city, holding that the ordinance is not on its face unconstitutionally vague and that plaintiffs' other contentions are precluded by plaintiffs' failure to challenge the city's action directly by administrative mandamus. We affirm.

#### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs admitted virtually all of the facts asserted in defendant's separate statement of undisputed facts. This case therefore presents a question of law for our independent review on the undisputed facts. (Code Civ. Proc., § 437c, subds. (b), (c); *B & E Convalescent Center* v. *State Compensation Ins. Fund* (1992) 8 Cal.App.4th 78, 88-89 [9 Cal.Rptr.2d 894].)

In order to preserve the character of established neighborhoods, deemed integral to the city's rural character, the city has a "neighborhood compatibility" ordinance, City of Rolling Hills Estates Municipal Code former section 1816, governing new construction and modifications of existing structures in established neighborhoods. It provides design criteria and objectives to maintain the established character of neighborhoods. Seven objectives are set forth with standards addressing (1) natural amenities, (2) neighborhood character, (3) scale, (4) style, (5) privacy, (6) landscaping, and (7) views. Regarding privacy, the standard relevant here, the ordinance provides, "Proposals shall preserve the open space and rural character of the surrounding neighborhood. Designs shall respect the existing privacy of surrounding properties by maintaining an adequate amount of separation between the proposed structure(s) and adjacent property lines. In addition, the design of balconies, decks and windows should also respect the existing privacy of surrounding properties."

Plaintiffs own the home at 27746 Palos Verdes Drive East in defendant city. In July 1990 plaintiffs applied for a variance to construct four additions to the residence, totaling 1,250 square feet. The proposal met neighborhood compatibility requirements and the variance was granted, with standard conditions that the development shall be constructed as shown on exhibits to the application and that any substantial modifications shall receive prior approval of the planning commission. In December 1990 plaintiffs submitted a second application involving revised plans. It too met neighborhood compatibility requirements and was granted. Neither application, however, showed an existing patio/deck on the northern portion of the property or indicated plaintiffs intended to construct a patio/deck.

During construction of the approved house addition, the city discovered in March 1992, as a result of neighbor complaints, the existence of the patio/deck, a nonapproved structure. The city required plaintiffs to submit a revised site plan and application for planning commission approval of various unapproved items including the patio/deck, and issued a "stop all work" notice. Plaintiffs submitted a new variance and neighborhood compatibility application in May 1992. The planning commission held public hearings on the application in June and July 1992. A number of neighbors voiced concerns that the patio/deck created a loss of privacy and created noise and light concerns. In July 1992, the planning commission adopted a resolution approving certain requests but denying plaintiffs' request for the patio/deck. This resolution stated that as a condition of obtaining final zone clearance, all nonapproved structures must be removed. Final approval by the planning commission is required after construction is completed in order to obtain permission to occupy the premises.

Plaintiffs appealed the planning commission decision to the city council. In August 1992, the city council affirmed the planning commission decision and adopted a resolution similar to the planning commission's resolution, i.e., requiring that before final approval, the nonapproved patio/deck must be removed.

Plaintiffs did not seek judicial review of the city council's decision by way of administrative mandamus under Code of Civil Procedure section 1094.5. Rather, plaintiffs filed this action in March 1993, alleging three causes of action under the federal Civil Rights Act. In their third cause of action plaintiffs asserted the neighborhood compatibility ordinance is unconstitutional on its face on the grounds it is purely aesthetic with no substantial health, safety, or public welfare purpose and it has no objective criteria to guide officials in making a determination. In their first cause of action

plaintiffs asserted that by reason of negligence and oral statements of city officials, and plaintiffs' substantial completion of the house addition before the patio/deck problem was discovered, plaintiffs had acquired a vested property right to have final zone clearance and permission to occupy the house, and that the patio/deck problem should be handled separately, instead of final zone clearance for the house addition being used as "leverage." In their second cause of action plaintiffs asserted the city's decision on the merits of the patio/deck privacy issue was irrational, arbitrary, and unsupported by the evidence, and the city denied due process to plaintiffs because the decision was prejudged and made solely to "soothe adjacent property owners." Plaintiffs sought an injunction against enforcement of the ordinance and against enforcement of the condition for removal of the patio/deck prior to issuance of final zone clearance, and damages for being unable to occupy the house after September 1992, when the house was otherwise ready for occupancy.[1]

In granting defendant's motion for summary judgment the trial court held (1) the ordinance is not unconstitutionally vague and (2) plaintiffs' failure to file an action for administrative mandamus to challenge the city's determination bars plaintiffs' present claims under the federal Civil Rights Act. We agree.

## DISCUSSION

### Vagueness

Plaintiffs contend the ordinance is vague on its face. Insofar as applicable here, the ordinance provides that designs "shall respect the existing privacy of surrounding properties by maintaining an adequate amount of separation between proposed structure(s) and adjacent property lines. In addition, the design of balconies, decks and windows should also respect the existing privacy of surrounding properties."

A statute cannot forbid or require the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. It must provide some standard of conduct for those whose activities are proscribed and for the agencies called upon to ascertain compliance. (*Ross* v. *City of Rolling Hills Estates* (1987) 192 Cal.App.3d 370, 375 [238 Cal.Rptr. 561].) But on the other hand,

---

[1] In April 1993, the trial court denied a preliminary injunction. It appears from the declaration of Planning Director Thompson that sometime after July 1993 plaintiffs modified the patio/deck in a manner approved by the city to remove the privacy intrusions.

especially in regard to zoning matters, laws must be written broadly enough to allow substantial discretion to administrative bodies and need not be so rigid as to eliminate all possible differences of opinion. (*Novi* v. *City of Pacifica* (1985) 169 Cal.App.3d 678, 682 [215 Cal.Rptr. 439].)

We find that in requiring the design to "respect the existing privacy of surrounding properties" the ordinance is not unconstitutionally vague. In *Ross* v. *City of Rolling Hills Estates*, *supra*, 192 Cal.App.3d at pages 374-376, the court upheld the city's view ordinance against an argument that words such as "needless," "discourage," "view," "impairment" and "significantly obstructed" made it unconstitutionally vague.[2] In *Novi* v. *City of Pacifica*, *supra*, 169 Cal.App.3d at pages 681-682, the court upheld against a vagueness challenge an ordinance requiring " '[sufficient] variety in the design of the structure and grounds to avoid monotony in the external appearance.' " In *Harris* v. *City of Costa Mesa* (1994) 25 Cal.App.4th 963, 973-975 [31 Cal.Rptr.2d 1], the court upheld the denial under a compatibility ordinance of a permit for a three-story apartment and garage in a residential neighborhood. The court noted that it was proper for the ordinance to address aesthetic issues, which included privacy, and for the city council to consider the concerns expressed by neighbors. (*Ibid.*) *Harris* cited *Desmond* v. *County of Contra Costa* (1993) 21 Cal.App.4th 330, 339 [25 Cal.Rptr.2d 842], in which the court upheld the denial under a compatibility ordinance of a two-story rental unit in a residential neighborhood, where the board properly considered neighbors' aesthetic objections and opinions that the proposed structure was out of character for the neighborhood.

The instant ordinance requiring "respect [for] the existing privacy of surrounding properties" is not comparable to ordinances invalidated in the cases cited by plaintiffs. (*Connally* v. *General Construction Co.* (1926) 269 U.S. 385, 388, 394-395 [70 L.Ed. 322, 329-330, 46 S.Ct. 126] [wage regulation requiring payment of " 'not less than the current rate of per diem wages in the locality where the work is performed' " without definition of "locality"]; *People* v. *Binzley* (1956) 146 Cal.App.2d Supp. 889, 890 [303 P.2d 903] [permitting business use for any business " 'not more obnoxious or detrimental to the welfare of the particular community' " than the types specifically listed]; *Chalmers* v. *City of Los Angeles* (9th Cir. 1985) 762 F.2d 753, 757-758 [*conflicting* ordinances on street vendor sales; even city attorney uncertain of meaning]; *Effie, Inc.* v. *City of Ocala* (Fla.Dist.Ct.App. 1983) 438 So.2d 506, 509 [ordinance gave unbridled discretion to consider " 'all other pertinent factors that may arise' " to deny permit to sell alcoholic

---

[2]Similarly here, plaintiffs complain that general terms in the ordinance such as "neighborhood" and "mitigating factors" are not defined.

beverages]; *Smith* v. *County of Los Angeles* (1994) 24 Cal.App.4th 990, 999 [29 Cal.Rptr.2d 680] [ordinance regulating protected First Amendment activity (nude dancing cabaret) must have narrow, objective, and definite standards]; *Ross* v. *City of Yorba Linda* (1991) 1 Cal.App.4th 954, 964-968 [2 Cal.Rptr.2d 638] [irrational discriminatory "spot zoning" could not be justified by "mere fact" of neighborhood opposition to subdividing larger parcel].)

Determining whether plaintiffs' particular project "respect[ed] the existing privacy of surrounding properties" should be no more difficult than determining under the view ordinance whether a project adequately protects a view. The privacy factor of the neighborhood compatibility ordinance is no more impermissibly vague than the view ordinance upheld in *Ross* v. *City of Rolling Hills Estates*, *supra*, 192 Cal.App.3d at pages 374-376.

### Failure to Pursue Administrative Mandamus

Aside from their constitutional attack against the ordinance on its face as void for vagueness (third cause of action), plaintiffs in their first two causes of action attacked the ordinance as applied. Plaintiffs contended it was improper for the city to require, as a condition for final zone clearance of their house addition, that plaintiffs remove the patio/deck. Plaintiffs asserted a variety of theories, often invoking constitutional "buzz words" to state a cause of action under the federal Civil Rights Act. (*See Burchett* v. *City of Newport Beach* (1995) 33 Cal.App.4th 1472, 1481 [40 Cal.Rptr.2d 1].) Plaintiffs contended that it was wrong for the planning commission and city council to attach the condition to remove the patio/deck because: plaintiffs relied on statements of an employee of the planning department and acquired a vested right to final clearance before the patio/deck problem was discovered; the city is estopped to enforce the condition; city officials initially promised they would not use that "leverage" but the mayor changed his mind after plaintiffs declined a business investment with him; the city was required by its own enforcement policy to prosecute plaintiffs criminally instead of using leverage; a city councilman did not disclose his association with complaining neighbors; the city council interfered prematurely when the matter was still in the planning commission stage; the decision was prejudged; the decision was inconsistent because the "neighborhood" for the purpose of approving the style and scale of the house addition was different than the "surrounding property" for the purpose of the privacy factor; the decision was made only to soothe adjacent property owners; and the decision was arbitrary, irrational, and unsupported by the evidence because the patio/deck did not interfere with the neighbors' "existing" privacy and plaintiffs offered sufficient mitigating landscaping.

Plaintiffs never sought to set aside the city's decision by petitioning for a writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5.[3] Plaintiffs could and should have sought direct judicial review of the city's decision by administrative mandamus; if the condition to which plaintiffs objected was improperly imposed, it could have been vacated pursuant to section 1094.5. Plaintiffs completely bypassed the proper procedure and instead sought damages and injunctive relief by this independent action.

In *City of Santee* v. *Superior Court* (1991) 228 Cal.App.3d 713 [279 Cal.Rptr. 22], the city revoked a builder's occupancy permit because the builder had not complied with required driveway and wall conditions. The builder brought an action for fraud and declaratory relief. The appellate court held the city was entitled to summary judgment because the builder's exclusive remedy was administrative mandamus, and the builder's failure to pursue that remedy estopped the builder to challenge those conditions collaterally by an independent action. The court said, "[A] proceeding under Code of Civil Procedure section 1094.5 is the exclusive remedy for judicial review of the quasi-adjudicatory administrative action of the local-level agency. . . . Unless a party seeks a declaration a statute or ordinance controlling development is facially unconstitutional . . . declaratory relief may not be had. . . . [T]he proper method to challenge the validity of conditions imposed on a building permit is administrative mandamus under Code of Civil Procedure section 1094.5. . . . 'A landowner cannot challenge a condition imposed upon the granting of a permit after acquiescence in the condition by either specifically agreeing to the condition or failing to challenge its validity, and accepting the benefits afforded by the permit.' . . . In other words, because the validity of the permit condition was at issue in the prior administrative proceeding, [the builder's] failure to contest the validity of the driveway and wall conditions by the means provided for judicial review through administrative mandamus estops it now from relitigating the same issue . . . ." (*Id.* at pp. 718-719, fn. omitted.)

As explained in *Knickerbocker* v. *City of Stockton* (1988) 199 Cal.App.3d 235, 240-244 [244 Cal.Rptr. 764], this rule is not the doctrine of

---

[3]Code of Civil Procedure section 1094.5 provides in pertinent part, "(a) Where the writ is issued for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer, the case shall be heard by the court sitting without a jury. . . . [¶] (b) The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence. . . ."

"failure to exhaust administrative remedies." Rather it is a form of res judicata, of giving collateral estoppel effect to the administrative agency's decision, because that decision has achieved finality due to the aggrieved party's failure to pursue the exclusive *judicial* remedy for reviewing administrative action.[4]

■ Plaintiffs contend this doctrine may not be invoked, because their action is under the federal Civil Rights Act; they are wrong. In *Swartzendruber* v. *City of San Diego* (1992) 3 Cal.App.4th 896 [5 Cal.Rptr.2d 64], a discharged police officer brought an action against her former employer for various torts and for violation of the federal Civil Rights Act. She had failed to pursue administrative mandamus under Code of Civil Procedure section 1094.5 to set aside the decision of the city civil service commission upholding her discharge. The court held that because the same primary right, continued employment, was involved in the civil service commission proceedings, the plaintiff's failure to seek administrative mandamus precluded certain causes of action. (3 Cal.App.4th at pp. 903-904; *see also Westlake Community Hospital* v. *Superior Court* (1976) 17 Cal.3d 465, 484 [131 Cal.Rptr. 90, 551 P.2d 410]; *Burchett* v. *City of Newport Beach, supra,* 33 Cal.App.4th at p. 1481, fn. 7.) *Swartzendruber* then held the same rule applied to the federal civil rights cause of action. " 'There can be no justification for plaintiff's position that she should be permitted to fail to assert at the administrative hearing constitutional and civil rights violations as reasons that made her termination wrongful, fail to prevail on the writ without attempting to urge or to bring before the court those reasons, and then be allowed to recover damages in this consolidated action that resulted from termination of her employment alleged to [be] wrongful based on those same reasons.' " (*Swartzendruber* v. *City of San Diego, supra,* 3 Cal.App.4th at p. 909.) The court cited United States Supreme Court authority consistent with applying this preclusion doctrine in a federal civil rights case. "[T]he highest court in the land has held the principles of res judicata and collateral estoppel apply to the federal civil rights statutes. In *University of Tennessee* v. *Elliott* (1986) 478 U.S. 788. . . , the United States Supreme Court stated that Congress in enacting the federal civil rights statute did not intend to create an exception to general rules of preclusion with respect to administrative adjudications. The high court in *Elliott* held that when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal

[4]Plaintiffs misplace reliance on *Rubin* v. *Board of Directors* (1940) 16 Cal.2d 119, 126 [104 P.2d 1041], which states that a property owner may assert in a judicial proceeding that a zoning law is "unconstitutional as applied to their property." The point here is that plaintiffs declined to invoke the exclusive judicial proceeding in which to raise such a claim, administrative mandamus, and cannot now relitigate that issue.

courts in actions under the reconstruction civil rights statutes (42 U.S.C. § 1983 et seq.) must give the agency's factfinding the same preclusive effect it would be entitled to in the state courts. (478 U.S. at pp. 796-799 . . . .)" (*Swartzendruber* v. *City of San Diego, supra,* 3 Cal.App.4th at p. 909.)

This result does not contradict the general rule that a party may bring an action under the federal Civil Rights Act without exhausting state administrative remedies. (*E.g., Patsy* v. *Florida Board of Regents* (1982) 457 U.S. 496 [73 L.Ed.2d 172, 102 S.Ct. 2557].) In asserting they were not required to "exhaust administrative remedies," plaintiffs cite *Zinermon* v. *Burch* (1990) 494 U.S. 113 [108 L.Ed.2d 100, 110 S.Ct. 975] and *Bateson* v. *Geisse* (9th Cir. 1988) 857 F.2d 1300. In *Zinermon* a former mental patient sought damages under the federal Civil Rights Act against hospital officials who admitted him to the hospital purportedly by his consent but knowing he was incompetent to give valid consent. The issue in *Zinermon* is not relevant to this case, but plaintiffs cite its language stating, " 'The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked.' [Citation.] [¶] Thus, overlapping state remedies are generally irrelevant to the question of the existence of a cause of action under § 1983. . . . [¶] [A plaintiff asserting a claim other than for violation of procedural due process] may invoke § 1983 regardless of any state-tort remedy that might be available to compensate him for the deprivation of these rights." (494 U.S. at pp. 124-125 [108 L.Ed.2d at pp. 112-114].) In *Bateson* a builder was arbitrarily denied a building permit for which he qualified. His federal civil rights action had a "taking" claim and a claim that the arbitrary denial of a permit violated substantive due process even if it did not amount to a taking of property. The court held that as to the substantive due process claim the builder was not required to seek "just compensation" pursuant to state procedures before filing his federal civil rights action. (857 F.2d at p. 1303.) In both of these cases the court was referring to state postdeprivation remedies providing damages or compensation. That is not analogous to the case here, where plaintiffs allowed administrative action to become final by failing to seek judicial review by administrative mandamus to set it aside.

The distinction between failing to exhaust administrative remedies and failing to seek judicial review of administrative action was discussed in *Miller* v. *County of Santa Cruz* (9th Cir. 1994) 39 F.3d 1030, a case where the Ninth Circuit Court of Appeals followed *Swartzendruber* v. *City of San Diego, supra,* 3 Cal.App.4th 896, and *University of Tennessee* v. *Elliott* (1986) 478 U.S. 788 [92 L.Ed.2d 635, 106 S.Ct. 3220], to reach a similar result. In *Miller* a county sheriff's employee was fired, and his dismissal was

upheld by the county civil service commission after an evidentiary hearing. The employee did not seek judicial review of the civil service commission decision by administrative mandamus pursuant to Code of Civil Procedure section 1094.5, but instead filed suit in federal court under the federal Civil Rights Act. The court affirmed the trial court's grant of summary judgment against the plaintiff on the grounds of res judicata and collateral estoppel, holding that the unreviewed findings of the state administrative tribunal were entitled to preclusive effect so as to bar the federal civil rights action. (39 F.3d at p. 1032.) The court cited two of its prior decisions stating that the aggrieved party, having the opportunity to seek judicial review of administrative action, cannot avoid giving preclusive effect to the administrative action by simply foregoing the right to review. (*Id.* at p. 1033, *citing Eilrich* v. *Remas* (9th Cir. 1988) 839 F.2d 630, 632, and *Plaine* v. *McCabe* (9th Cir. 1986) 797 F.2d 713, 719, fn. 12.) The plaintiff in *Miller*, like plaintiffs here, contended "he is not required to exhaust administrative remedies prior to filing suit under § 1983." The court found that rule inapposite. "No exhaustion requirement has been imposed on Miller. It is Miller's election to pursue his claim initially in an administrative forum, and to forego his right to seek judicial review in state court, which requires us to determine whether that decision is binding on all that was, or could have been, determined there." (*Miller* v. *County of Santa Cruz, supra,* 39 F.3d at p. 1034, fn. 3.) The United States Supreme Court denied certiorari in *Miller.* ((1995) __ U.S. __ [132 L.Ed.2d 856, 115 S. Ct. 2613].) Recently the Ninth Circuit Court of Appeals followed *Miller* in *Misischia* v. *Pirie* (9th Cir. 1995) 60 F.3d 626, 628-629, where a dentist was denied a license by a state medical board. He had a right but chose not to seek state judicial review of the board's decision. His federal civil rights action was held barred. "Because he chose not to exercise this right of appeal, the Board's order became final and operated with preclusive effect. His claims brought in federal court are precluded by the final, unappealed state administrative determination." (60 F.3d at p. 628.)

To avoid issue preclusion by their failure to pursue administrative mandamus, plaintiffs next contend that the city council's decision was legislative, not quasi-adjudicatory, and therefore Code of Civil Procedure section 1094.5 does not apply. There is no merit to this contention. The question before the city council was whether plaintiffs' patio/deck complied with the standard in the neighborhood compatibility ordinance that plaintiffs' project must respect the privacy of surrounding properties. This involved the application of the general standard in the ordinance to plaintiff's specific project and property. That is classically an adjudicatory function, not legislative. (*Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 614 [156 Cal.Rptr. 718, 596 P.2d 1134]; *Pacifica Corp.* v. *City of Camarillo* (1983) 149 Cal.App.3d 168, 176 [196 Cal.Rptr. 670].)

The city's decision was not comparable to the legislative functions involved in the cases cited by plaintiffs: *Anaheim Redevelopment Agency* v. *Dusek* (1987) 193 Cal.App.3d 249 [239 Cal.Rptr. 319] involved a redevelopment agency's decision to condemn a specific property for redevelopment. That decision "impacted all those living and working within the redevelopment district as well as those the Agency was attempting to entice to redevelop the area" and "was much more than a private dispute, for [the property] had long been targeted for condemnation as a crucial step to redevelopment of a blighted area." (*Id.* at p. 260.) *Wilson* v. *Hidden Valley Mun. Water Dist.* (1967) 256 Cal.App.2d 271 [63 Cal.Rptr. 889] involved a water district whose fundamental purpose was to preserve an agricultural way of life and prevent large-scale subdivision and urbanization. When owners of two large ranches desired to be excluded from the district in order to acquire a supplemental water supply, the decision of the district board of directors denying such exclusion was held to be a legislative one. "This was not just a private controversy. It was a continuation of the struggle within the District between an overwhelming majority and a very small minority over the basic local governmental water policy. At stake was the continuing effectiveness of that policy, ultimately perhaps the very existence of the District itself, and the kind of life that would prevail within Hidden Valley. Certainly the petitions posed to the board fundamentally political questions and the board's decisions in response therefore represented an exercise by it of essentially quasi-legislative powers." (*Id.* at p. 281.) In *Langsam* v. *City of Sausalito* (1987) 190 Cal.App.3d 871 [235 Cal.Rptr. 672] the court held that as a matter of law the city misinterpreted its parking ordinance in denying a building permit to convert part of a building to offices. The court affirmed the use of ordinary mandamus instead of administrative mandamus to review that decision, holding that in reality the city council amended its ordinance in the guise of an adjudicatory process. (*Id.* at p. 882.) The court noted that the city council was primarily concerned with not just a private controversy but larger community-wide issues of traffic congestion and whether any office uses should be allowed in the future. (*Id.* at p. 881.)

In contrast to these cases, the issue here was whether plaintiffs' patio/deck intruded on the privacy of adjacent neighboring properties, contrary to the neighborhood compatibility ordinance. The decision did not involve fundamental questions of city-wide concern or of making changes in existing law to govern future cases; it merely applied existing legal criteria to specific properties. (*Pacifica Corp.* v. *City of Camarillo, supra,* 149 Cal.App.3d at pp. 177-178.)

## DISPOSITION

The judgment is affirmed.

Epstein, Acting P. J., and Hastings, J., concurred.

Appellants' petition for review by the Supreme Court was denied February 22, 1996. Kennard, J., was of the opinion that the petition should be granted.